**Shelly H. Cozakos, ISB No. 5374**
**PICKENS COZAKOS, P.A.**
398 S. 9th Street, Suite 240
P.O. Box 915
Boise, Idaho 83701
Telephone: 208.954.5090
Facsimile: 208.954.5099
shelly@pickenslawboise.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| RANDI ALLRED, an individual, | Case No. |
| *Plaintiff,* | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| HOME DEPOT USA, INC., dba THE HOME DEPOT, | |
| *Defendant.* | |

Plaintiff, Randi Allred, an individual, by and through her counsel of record, Shelly H. Cozakos of the firm Pickens Cozakos, P.A., and as a cause of action against Defendant Home Depot USA, Inc., dba The Home Depot ("Defendant" or "Home Depot"), alleges and complains as follows:

**JURISDICTION AND VENUE**

1.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, as amended ("Title VII"), the Pregnancy Discrimination Act, 42 U.S.C. § 2000 e (k)

("PDA"), and the Idaho Human Rights Act, § 67-590 *et sec.* ("IHRA") to redress employment practices of Defendant in violation of these federal and state statutes.

2.      The matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

3.      Venue is proper in this district pursuant to 28 U.S.C § 1391(b) & (c) and 42 U.S.C. § 2000, *et sec.* because a substantial part of the wrongful conduct complained of herein occurred in this district, Defendant transacts substantial business in this district and Defendant maintains employment records related to this action in this district.

4.      Plaintiff has exhausted her administrative remedies and complied with the statutory prerequisites of Title VII by filling charges with the United States Equal Employment Opportunity Commission ("EEOC") and the Idaho Human Rights Commission ("IHRC") alleging discrimination and has received a Notice of Right to Sue from both, copies of which are attached as Exhibit A.

## PARTIES

5.      Plaintiff Randi Allred ("Allred") is an Idaho resident.

6.      Between January 2013 and January 2017 Allred was a female "employee" at Home Depot, as defined by Title VII.

7.      At all times relevant hereto, Allred was an "individual" or "person" as defined by the IHRA.

8.      Defendant Home Depot, Inc. ("Home Depot") is a Corporation organized and existing under the laws of the State of Delaware, doing business in the State of Idaho.

9.      At all times relevant to this action, Home Depot was and is an "employer" as defined by Title VII and the IHRA.

10.      At all times relevant to this action, Home Depot was Allred's employer under Title VII and the IHRA.

## GENERAL FACTS

11.      In or around January 2013, Allred started working at Home Depot in Meridian, Idaho in a supervisory position.

12.      Allred worked her way up to the position of Assistant Store Manager while at the Meridian store.

13.      In or around January 2015, Allred transferred to the Nampa, Idaho Home Depot, where she worked as Assistant Store Manager.

14.      At all times relevant hereto, the Nampa Store Manager was and is Josh Hazlett ("Hazlett").

15.      At all times relevant hereto, Hazlett was Allred's supervisor and point of contact for all personnel issues.

16.      Allred's duties as Assistant Store Manager included supervision of the lumber, hardware, plumbing and Pro departments.

17.      Allred's position required considerable physical strength and exertion.

18.      In or around March 2016, Allred informed Hazlett that she was pregnant.

19.      In or around April 2016, began experiencing pregnancy complications that were diagnosed by her doctor as Placenta Previa.

20.     As a result of her diagnosed medical condition, Allred was unable to perform her regular job duties.

21.     Subsequent to her diagnosis, Hazlett placed Allred on a leave of absence.

22.     Allred utilized disability benefits, which were applied by the Human Resources Department to her benefits under the Family Medical Leave Act ("FMLA").

23.     By late August 2016, Allred has used up her FMLA benefits for the calendar year.

24.     Allred continued to utilize disability benefits through the remainder of her pregnancy.

25.     On October 11, 2016, Allred gave birth to her son, Cayden Allred ("Cayden")

26.     Following Cayden's delivery, Allred's physician recommended she take twelve weeks of recovery time.

27.     Allred's physician released her for a return to work on or about January 3, 2017.

28.     Allred contacted Diana Quanstrom ("Quanstrom"), a representative in the Home Depot human resources department ("HR"), that she intended to return to work after January 3, 2017.

29.     Allred also contacted Hazlett in December 2016, requesting that she be placed on the work schedule for January 3, 2017.

30.     Hazlett scheduled Allred to return to work on January 5, 2017.

31.     When Allred arrived for work that day, she discovered that Hazlett had not made arrangements for her return.

32.     Hazlett was not present at the store that day.

33.     Allred contacted the HR department and was told, upon information and belief, that Hazlett had failed to activate her return to work status in the computer system.

34.     Allred was informed that she would have to fill out a form before starting work, and that she could not work or receive any pay therefor until the following day.

35.     Allred returned to work on January 6, 2017.

36.     Upon arriving at work, Allred informed the Medical Health Management ("MHM") department that she would need certain post-pregnancy accommodations ("Accommodations") in the workplace due to her physical need to express and store breast milk for Cayden.

37.     During Cayden's first few months of life, it had been discovered that he was allergic to both milk and soy, the main components of store bought baby formula.

38.     As a result of his severe allergies, Cayden required Allred's breast milk as his exclusive source of nourishment.

39.     To document the medical necessity for Accommodations, Allred provided the MHM with a Home Depot official Certification of Health Care Provider Form—Associate's Serious Health Condition ("Certification") signed by her physician, attached hereto as Exhibit A.

40.     The Certification specified that Allred would need additional breaks, approximately 30 minutes every three hours to express her breast milk, up through October 11, 2017.

41.     Upon its receipt of the Certification, the MHM department instructed Allred to work directly with Hazlett for these Accommodations to be incorporated into her schedule.

42.     Despite speaking to Hazlett directly about her medically necessary Accommodations, Hazlett scheduled Allred for seven straight days of ten-hour shifts without incorporating any breaks for Allred to express her breast milk.

43.     After receiving the request for accommodation, Hazlett essentially ignored the request, refused to review or address the request with Allred, and ultimately denied the request by refusing to follow it or make any accommodations to Allred's schedule.

44.     Allred had not been scheduled for shifts of this duration with no days off prior to going on her FMLA leave, and was surprised by the rigorous schedule Hazlett placed her on.

45.     When her schedule and the rotation she had been placed on made expression of her breast milk impossible, Allred again requested that Hazlett honor her Accommodations.

46.     Hazlett was unwilling to discuss any modification to Allred's schedule to incorporate her Accommodations.

47.     Home Depot's own policies require it to respond within three days, to any request for accommodation.

48.     Allred then attempted to contact Hazlett via text, offering to use two weeks of vacation time she had accrued to reduce her shift length and allow her to either express her breast milk or to be available to nurse her baby.

49.     Hazlett did not respond to Allred's text.

50.     Hazlett continued to schedule Allred for ten-hour shifts without any breaks for expression of her breast milk.

51.     Allred suffered from pain and discomfort from the inability to take breaks to express her breast milk as required by her Accommodations.

52.     As a result of being denied her Accommodations, Allred's breast milk began drying up, and she could not provide Cayden with the quantity of food he needed to continue being adequately nourished.

53.     On or about January 26, 2017 Allred contacted Quanstrom via email requesting assistance with receiving her Accommodations.

54.     In her email, Allred expressed her concern to Quanstrom that if she could not receive her Accommodations, she would likely be forced to leave her position.

55.     Allred also left a message for the District Manager, Trevor Cantwell ("Cantwell") requesting his assistance in receiving her Accommodations.

56.     On or about that same day, Allred received an email from Hazlett, assuring her they would meet the following day, January 27, 2017.

57.     When she arrived at work the following day, Allred once again discovered there was no coverage in place that would allow her to receive her Accommodations to express her breast milk.

58.     While waiting for Hazlett's arrival at work at 2:00 p.m. so that she could again request her need for her Accommodations, Allred continued to experience extreme physical pain as a result of her inability to express her breast milk.

59.     By the time she spoke with Hazlett that day, her pain was so intolerable, Allred felt she could not physically continue working.

60.     When Allred spoke with Hazlett, requesting time to express her breast milk per her Accommodations, he expressed no real understanding or concern for the seriousness of her condition.

61.     Rather, Hazlett informed Allred that her position at Home Depot would be difficult for her to maintain over time anyway since should her children become sick, Allred's husband would be unavailable to care for them, making it impossible for her to work her schedule as required.

62.     Allred informed Hazlett that without her Accommodations, she did not believe that she would be able to continue working at Home Depot.

63.     Allred explained to Hazlett that she was physically unable to continue the discussion since she needed to first express her breast milk, and requested that they continue their talk the following week when she returned for her next shift.

64.     That evening, Quanstrom called Allred at home, ostensibly to offer an apology for Hazlett's lack of responsiveness.

65.     Allred once again expressed to Quanstrom the need to receive her Accommodations, allowing her the breaks necessary to express her breast milk.

66.     At no time during their conversation did Quanstrom offer any assurances that Allred's Accommodations would be provided, or any sort of alternative accommodation that would allow Allred to continue in her position at Home Depot.

67.     When Allred returned to work on the morning of January 30, 2017, she made one last effort to request her Accommodations from Hazlett.

68.     While in Hazlett's office, Cantwell and Quanstrom called Allred's work phone, and she put them on speaker phone to join the discussion.

69.     Rather than offering compliance with Allred's Accommodations, or any other viable accommodation, Quanstrom instead asked Allred if she had made a decision about staying in or resigning her position at Home Depot.

70.     Allred explained that she had continued to work all month without any Accommodations, and that as a result, she had suffered not only great physical pain, but that her breast milk had almost completely dried up.

71.     Allred asked Hazlett, Cantwell and Quanstrom how her Accommodations would be provided should she remain at Home Depot.

72.     None of the parties offered Allred any assurances ore represented that her Accommodations would be provided.

73.     None of the parties asked what shifts Allred would need, what coverage she believed would be necessary to provide her Accommodations, or any other questions relevant to complying with her Accommodations.

74.     The working conditions created by Home Depot had become so intolerable that no reasonable person in Allred's position could continue working.  Allred therefore informed Hazlett, Cantwell and Quanstrom that she could no longer continue working at Home Depot under the current circumstances.

75.     Quanstrom replied that she was "sorry it did not work out."

76.     Allred left her position at Home Depot on January 30, 2017.

77.     Before she left, Allred made demand for payment of her two weeks' unused vacation pay.

78.     Hazlett assured Allred that she would receive said pay.

79.     Allred continued to text Hazlett throughout February 2017 regarding said vacation pay, but she has never received payment therefor.

80.     Upon information and belief, while Allred was on pregnancy leave under the FMLA, Hazlett was heard telling other employees that she was not likely to return to her position at Home Depot.

81.     Upon information and belief, while Allred was on pregnancy leave under the FMLA, Hazlett hired a replacement for her.

82.     Upon information and belief, Hazlett had begun interviewing for, and had already hired a replacement for Allred prior to her resignation on January 30, 2017.

83.     Upon information and belief, Home Depot did not investigate Allred's concerns, including her complaints of pregnancy discrimination at any time prior or subsequent to her resignation on January 30, 2017.

84.     Home Depot cultivates a work environment and culture that discriminates against female employees in general, as well as pregnant employees and female employees who have child-rearing responsibilities in particular.

85.     Despite Allred's skills, qualifications, experience, and compliance with all management and scheduling demands, Home Depot management discriminated against her based on her gender, her pregnancy, her taking of maternity leave, her pregnancy-related condition, and her caregiving responsibilities, by failing to provide her Accommodations, by overscheduling her, making ridiculing comments, and creating a hostile work environment, ultimately resulting in her constructive discharge.

86.     Allred is now out of work and her ability to support herself and her family have been greatly affected.

## COUNT I—VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000 *et seq*.
## PREGNANCY DISCRIMINATION

87.     The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

88.     Home Depot has discriminated against Allred in violation of Title VII because of or on the basis or pregnancy, childbirth, or related medical condition.

89.     Lactation is a medical condition related to childbirth, and as such, is protected under Title VII's Pregnancy Discrimination Act ("PDA").

90.     When Allred returned to work after her pregnancy leave, she was lactating, which required accommodations to allow her the opportunity to express her breast milk.

91.     Home Depot's conduct in the unreasonable scheduling of Allred, and failure to provide Allred with this medically necessary accommodation constitutes discrimination based on lactation.

92.     Discrimination based on lactation constitutes sex discrimination under the PDA.

93.     Allred was treated differently for all employment-related purposes including conditions of employment in her workplace than other employees with similar ability to work who were either male, not pregnant, not known to be pregnant, or without a medical condition related to childbirth.

94.     Home Depot failed to prevent, respond to, adequately investigate and/or appropriately resolve the pregnancy and/or sex discrimination against Allred in the workplace.

95.     Home Depot's policies, practices, and/or procedures produced a disparate impact on Allred with respect to the terms and conditions of her employment.

96.     As a direct and proximate result of Home Depot's conduct alleged herein, Allred has suffered and continues to suffer harm, including but not limited to lost wages, lost back pay and front pay, lost future employment opportunities, and other financial loss, as well as non-economic damages.

97.     As a further and direct and proximate result of Home Depot's unlawful conduct, Allred has suffered pain, humiliation, embarrassment, emotional and physical distress, and mental anguish.

98.     By reason of Home Depot's discrimination, Allred is entitled to all legal and equitable remedies to recover such monetary and other damages, including compensatory and punitive damages from Home Depot under Title VII.

99.     Attorneys' fees and costs should be awarded under 42 U.S.C. § 2000 *et seq*.

**COUNT II— VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000 *et seq*.**
**CONSTRUCTIVE DISCHARGE**

100.    The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

101.    Home Depot has discriminated against Allred in violation of Title VII because of or on the basis or pregnancy, childbirth, or related medical condition.

102.    Lactation is a medical condition related to childbirth, and as such, is protected under Title VII's Pregnancy Discrimination Act ("PDA").

103.    When Allred returned to work after her pregnancy leave, she was lactating, which required accommodations to allow her the opportunity to express her breast milk.

104.    Home Depot's conduct in the unreasonable scheduling of Allred, and failure to provide Allred with this medically necessary accommodation constitutes discrimination based on lactation.

105.    Discrimination based on lactation constitutes sex discrimination under the PDA.

106.    Other employees who were either male, not pregnant, or not known to be pregnant with temporary injuries were provided with reasonable accommodations by Home Depot to allow them to continue in their positions until they had recovered from said injuries.

107.    Allred's accommodation did not constitute a special accommodation, but was rather a request for equal treatment as other persons not so affected but similar in their ability or inability to work as required by the PDA.

108.    Home Depot's refusal to provide Allred an accommodation afforded to other employees, along with derogatory comments from Hazlett regarding her caregiver status and pregnancy-related condition made Allred feel ashamed, self-conscious, and ostracized based upon her sex.

109.    Home Depot's and Hazlett's actions, combined with the physical pain Allred experienced as a result of being denied the opportunity to express her breast milk while at work, and the stress and anxiety she felt at not being able to provide Cayden with the nourishment he needed forced Allred's resignation.

110.    Home Depot's and Hazlett's discrimination and repeated misconduct against Allred resulted in the creation of a work environment so intolerable that it forced her resignation.

111.    Said resignation constitutes a constructive discharge under Title VII.

112.    Home Depot's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Allred as a member of this protected class, entitling her to punitive damages.

113.    As a direct and proximate result of Home Depot's conduct alleged herein, Allred has suffered and continues to suffer harm, including but not limited to lost wages, lost back pay and front pay, lost future employment opportunities, and other financial loss, as well as non-economic damages.

114.    As a further and direct and proximate result of Home Depot's unlawful conduct, Allred has suffered pain, humiliation, embarrassment, emotional and physical distress, and mental anguish.

115.    By reason of Home Depot's discrimination, Allred is entitled to all legal and equitable remedies to recover such monetary and other damages, including compensatory and punitive damages from Home Depot under Title VII.

116.    Attorneys' fees and costs should be awarded under 42 U.S.C. § 2000 *et seq*.

## COUNT III—VIOLATION OF FAMILY MEDICAL LEAVE ACT
## 29 U.S.C.A. § 2611, et seq.

117.    The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

118.    Under the Family Medical Leave Act, ("FMLA"), an employee must be restored by the employer to the same position held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

119.    Further, an employer cannot use the taking of FMLA leave as a "negative factor" in employment actions such as scheduling and providing accommodations or benefits.

120.    Allred took approved FMLA leave for maternity leave in 2016.

121.    Hazlett and/or Home Depot interfered with Allred's taking of protected maternity leave, and discriminated against her for the taking of such leave, in violation of the FMLA.

122.    Hazlett and/or Home Depot interfered with Allred's taking of FMLA-protected maternity leave and discriminated against her for taking such leave by using the taking of FMLA leave as a negative factor in employment actions upon her return therefrom, including, *inter alia*, scheduling Allred for ten-hour shifts, seven days a week, denying her pregnancy-related condition accommodations, creating an environment hostile to pregnancy and the taking of statutorily protected maternity leave, and constructively discharging Allred.

123.    Home Depot's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Allred under the FMLA, entitling her to punitive damages.

124.    As a direct and proximate result of Home Depot's conduct alleged herein, Allred has suffered and continues to suffer harm, including but not limited to lost wages, lost back pay and front pay, lost future employment opportunities, and other financial loss, as well as non-economic damages.

125.    As a further and direct and proximate result of Home Depot's unlawful conduct, Allred has suffered pain, humiliation, embarrassment, emotional and physical distress, and mental anguish.

126.    By reason of Home Depot's discrimination, Allred is entitled to all legal and equitable remedies available for violations of the FMLA, including an award of liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C.A. § 2617.

## COUNT VI—DISCRIMINATION IN VIOLATION OF IDAHO HUMAN RIGHTS ACT IDAHO CODE § 67-5900 *et sec.*

127.    The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

128.    As an employer as defined by the Idaho Human Rights Act ("IHRA"), Idaho Code § 67-5902, Home Depot was required to comply with the requirements therein in its hiring and treatment of employees.

129.    Pursuant to the IHRA, Home Depot is prohibited from discriminating against an employee on the basis of sex or a disability.

130.    Allred is person protected by the IHRA.

131.    Per the IHRA, Home Depot is prohibited from discriminating against Allred based on sex or a disability.

132.    When Allred returned to work after her pregnancy leave, she was lactating, which required an accommodation to allow her the opportunity to express her breast milk.

133.    Allred's post-pregnancy condition requiring an accommodation to express her breast milk was a direct result of her sex and was a protected disability under the IRHA.

134.    Home Depot's conduct in the unreasonable scheduling of Allred, and failure to provide her with this medically necessary accommodation constitutes discrimination based on her sex and her disability.

COMPLAINT AND DEMAND FOR JURY TRIAL - 16

135.    Other employees who were either male, not pregnant, or not known to be pregnant with temporary injuries were provided with reasonable accommodations by Home Depot to allow them to continue in their positions until they had recovered from said injuries.

136.    Had Home Depot provided Allred with the reasonable accommodation of allowing her the opportunity to express her breast milk, she would have been able to continue to perform her job duties.

137.    Home Depot's refusal to provide Allred an accommodation afforded to other employees, along with derogatory comments from Hazlett regarding her caregiver status and pregnancy-related condition made Allred feel ashamed, self-conscious, and ostracized based upon her sex and her disability.

138.    Home Depot's and Hazlett's actions, combined with the physical pain Allred experienced as a result of being denied the opportunity to express her breast milk while at work, and the stress and anxiety she felt at not being able to provide Cayden with the nourishment he needed forced Allred's resignation.

139.    Home Depot's and Hazlett's unlawful discrimination against Allred resulted in the creation of a work environment so intolerable that it forced her resignation.

140.    Said resignation constitutes a constructive discharge under the IHRA.

141.    Home Depot's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Allred as a member of this protected class, entitling her to punitive damages pursuant to Idaho Code § 67-5908(3)(e).

142.    As a direct and proximate result of Home Depot's conduct alleged herein, Allred has suffered and continues to suffer harm, including lost wages, lost back pay and front pay.

143.    As a further and direct and proximate result of Home Depot's unlawful conduct, Allred has suffered pain, humiliation, embarrassment, emotional and physical distress, and mental anguish.

144.    By reason of Home Depot's discrimination, Allred is entitled to all legal and equitable remedies to recover such monetary and other damages, including compensatory and punitive damages from Home Depot pursuant to Idaho Code § 67-5908(3)(c) and (e).

## COUNT V—WAGE CLAIM

145.    The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

146.    Allred is owed the equivalent of two weeks' accrued vacation pay, or approximately $2340.00, which constitutes wages pursuant to Idaho Code § 45-601 *et seq*.

147.    Defendant refused to allow Allred to use the vacation pay when requested as part of her accommodation, and then promised to pay it to her upon termination of employment.

148.    Upon termination of her employment, Allred duly demanded payment of said wages from Home Depot, pursuant to Idaho Code § 45-606 (1).

149.    Home Depot failed to make payment to Allred of said wages within the time required by Idaho Code § 45-606(1).

150.    Home Depot has continued to refuse to pay said wages to Allred.

151.    Allred is entitled to payment of said wages, and a penalty of three times the amount of wages owed her pursuant to Idaho Code § 45-615(2), or the approximate total amount of $9360.00.

## COUNT IV
## BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING

152.    The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

153.    In Idaho, there is an implied covenant of good faith and fair dealing in every contract of employment, which requires the parties to refrain from taking any action that violates, nullifies or significantly impairs any employment benefit or right.

154.    Defendant breached this covenant by denying Allred the benefits of her employment agreement by discriminating against her; refusing to allow her the time necessary to extract breast milk for her baby; and by constructively terminating her employment for attempting to exercise these benefits and rights of employment.

155.    As a result of Defendant's actions, Allred has suffered contract damages, which exceed $75,000.

## COUNT V
## BREACH OF CONTRACT

156.    The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

157.    Defendant issued to Allred a handbook and other employment policies which constitute a contract of employment.

158.    Defendant failed to follow its own policies and procedures in its handbook and otherwise follow its own employment policies, thereby breaching the contract.

159.    As a result of Defendant's actions, Allred has suffered contract damages, which exceed $75,000.

## ATTORNEYS' FEES

1.   The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

2.   It has been necessary for Allred to retain counsel to prosecute this action to protect her rights as herein set forth and Allred requests that all of her reasonable attorneys' fees and costs be awarded by the Court pursuant to Idaho Code §§ 12-120(3), 12-121, 45-615(2), Title VII, the FMLA, Federal Rule of Civil Procedure 54, or other applicable law.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Allred hereby demands a trial by a jury on all triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Allred prays for judgment against Defendant Home Depot as follows:

1.   For the entry of judgment in her favor as to each Count pled.

2.   That judgment as to each Count pled be entered in accordance with the manner in which judgment was requested at the end of each Count pled.

3.   For the recovery of prejudgment interest at the rate allowed by law on any liquidated amounts due to Allred from the date they became due.

4.    For an award of costs and reasonable attorneys' fees to Allred;

5.   For other costs and expenses necessarily incurred in the prosecution of this action; and

6.   For such other relief the Court just and equitable under the circumstances.

DATED:  November 27, 2017.

PICKENS COZAKOS, P.A.


By_____/s/Shelly H. Cozakos_____
    Shelly H. Cozakos, of the Firm
    *Attorneys for Plaintiff Randi Allred*

VERIFICATION

STATE OF IDAHO    )
                  : ss
County of Ada     )

Randi Allred, being first duly sworn, deposes and says:

That she is the Plaintiff in the above-entitled matter, she has read the foregoing, she

knows the contents thereof, she believes that facts stated therein to be true to the best of her

knowledge and belief, and executed the same.

_____
Randi Allred

SUBSCRIBED AND SWORN To before me this 3 day of October , 2017.



_____
Notary Public for Idaho
Residing at _____ Idaho
My Commission Expires: _____

COMPLAINT AND DEMAND FOR JURY TRIAL

**EXHIBIT A**

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Randi Allred<br>C/O Shelly Cozakos<br>398 S 9th St. Ste. 240<br>Boise, ID 83701 | From: | Seattle Field Office<br>909 First Avenue<br>Suite 400<br>Seattle, WA 98104-1061 |
|---|---|---|---|

☐  *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 551-2017-01652 | **Alexandria Arbogast,**<br>**Investigator** | **(206) 220-6884** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Rodrig. W. Olom  For NAS*        'AUG 2 9 2017

Enclosures(s)

**Nancy A. Sienko,**
**Director**

*(Date Mailed)*

cc:

HOME DEPOT
Human Resource Office
2003 N Cassia St
Nampa, ID 83651



**IDAHO HUMAN RIGHTS COMMISSION** 317 W. Main St. Boise, ID 83735
t: 208.334.2873  f: 208.334.2664  w: humanrights.idaho.gov

NOTICE OF ADMINISTRATIVE DISMISSAL
AND RIGHT TO SUE

Shelly Cozakos                        Anne Budniewski, EEO
Pickens Cozakos, P.A.                 The Home Depot
P. O. Box 915                         3800 W. Chapman Ave
Boise, ID 83701                       Orange, CA 92868

RE:  Randi Allred vs. Home Depot U.S. A. Inc.
      d/b/a The Home Depot
      Complaint No: AD-7-0917-086; 38C-2017-00549


The above complaint filed with the Human Rights Commission is hereby dismissed pursuant to the
Commission's Rules and Procedures for the following reason:

[ X ]     Complainant has requested administrative dismissal and notice of right to sue.

[ ]       Failure of the Complainant to cooperate with the Commission in the processing of the
          case, including failure to answer interrogatories.

[ ]       Inability to locate Complainant.

[ ]       Investigation indicates that the case is not jurisdictional.

[ ]       The Complainant has filed a suit in either state or federal court alleging the same
          unlawful practices.

[]        Other: _____


This dismissal concludes the Commission's processing of this charge.   This is also
Complainant's Notice of Right to Sue under the Idaho Human Rights Act.  A private action
under the Idaho Human Rights Act must be filed in district court within ninety (90) days of the
date of this notice of administrative dismissal.  Failure to comply with this timeline may cause
Complainant to lose the right to go to court.  Complainant should consult with an attorney, if
litigation is a consideration.


_11/15/17_____                          _____
Date                                       Benjamin J. Earwicker, PhD, Administrator