# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RANDI ALLRED,<br><br>Plaintiff,<br><br>v.<br><br>HOME DEPOT USA, INC., dba THE HOME DEPOT, and JOSH HAZLETT,<br><br>Defendants. | Case No. 1:17-cv-00483-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Seven ripe motions are presently before the Court: (1) Home Depot's and Josh Hazlett's (collectively, "Home Depot") Motion for Summary Judgment, Dkt. 83; (2) Plaintiff's (hereinafter, "Allred") Motion for Leave to Amend to Add a Claim for Punitive Damages, Dkt. 85; (3) Allred's Motion to Exclude Exhibit 25 of Home Depot's Statement of Undisputed Facts in Support of Home Depot's Motion for Summary Judgment, Dkt. 94; (4) Home Depot's Motion to Partially Strike Allred's Motion for Leave to Amend to Add a Claim for Punitive Damages and for Discovery Sanctions under Federal Rules of Civil Procedure 26, 30, and 37, Dkt. 98; (5) Allred's Second Motion to Exclude Evidence, Dkt. 99; (6) Home Depot's Motion for Leave to File Late

Declarations in Support of Home Depot's Motion for Summary Judgment, Dkt. 106; and

(7) Allred's Motion to Strike Portions of Home Depot's Response in Opposition to

Allred's Motion for Leave to Amend to Add Claim for Punitive Damages, Dkt. 113).

The Court heard oral argument on all the motions on May 21, 2019.

## ANALYSIS

### 1.     Motions to Exclude and to Strike

The Court has been required to referee numerous discovery disputes in this case.

The Court's general policy regarding discovery disputes is to encourage the parties to not

only meet and confer, but to permit the Court to mediate the dispute, before any motions

to compel are filed.  That policy almost always leads to a resolution of the dispute

without the need for expensive and time-consuming motions, briefing, and judicial

intervention.  But, not in this case.  As a result of the parties' unwillingness or inability to

reach agreement, the Court was forced to take several actions which delayed discovery

unnecessarily and increased the cost of litigation – all in conflict with the command of

Rule 1 of the Federal Rules of Civil Procedure.

First, the Court sanctioned Home Depot for failing to appear at a noticed

deposition.  Dkt. 51.  Second, the Court quashed Allred's Rule 30(b)(6) subpoena

because, among other reasons, the subpoena was overbroad and improperly noticed.  Dkt.

66.  Third, the Court granted Allred's motion to compel discovery–which was filed after

the discovery deadline of December 21, 2018 had passed–and required select Home

Depot store managers to fill out a questionnaire crafted by the Court (with input from the Parties) under oath. Dkt. 79.

## A. *Legal Standard*

Both Home Depot and Allred allege that the other side failed to disclose materials pursuant to Rule 26(a) and failed to supplement their disclosures pursuant to Rule 26(e). As a remedy, Home Depot and Allred seek Rule 37 sanctions. Rule 37(c) states:

> [i]f a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court on motion or after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions including any of the orders listed in Rule 37(b)(2)(A) (i)-(vi).

## B. *Analysis*

### a. **Allred's Motion to Exclude Home Depot Exhibit 25 (Dkt. 94)**

The first motion to exclude comes from Allred. She asks to Court to exclude Exhibit 25 to Defendant's Statement of Undisputed Facts. Dkt. 86-25. Exhibit 25 contains scanned copies of the questionnaire crafted by the Court and counsel in response to Allred's Second Motion to Compel Discovery. Dkt. 71. This is the third time that the Court has been asked to address this dispute. Dkt. 65; Dkt. 71; Dkt. 94-1. To provide some context, Allred has repeatedly argued that Home Depot failed to sufficiently respond to Allred's First Interrogatory Request Number 4, Second Interrogatory Request Numbers 19 and 22, and Request for Production 38. Dkt. 65; Dkt. 71; Dkt. 94-1. This

dispute led Allred to notice, without Court approval, a *third* Rule 30(b)(6) deposition. In the context of evaluating Home Depot's motion to quash, the Court reviewed the interrogatories and request for production listed above. The Court determined that each of the interrogatories and the request for production were overbroad either temporally or geographically. The Court's decision on the motion to quash was partially driven by this conclusion. *See* Dkt. 66.

After the Court quashed Allred's subpoena, Allred filed a second motion to compel Home Depot's response to the listed interrogatories and request for production. Dkt. 71. After hearing oral argument from the Parties, the Court determined that it would take the extraordinary step of requiring select Home Depot managers to fill out a questionnaire under oath. Implicit in the Court's decision were the following premises: (1) discovery was closed, (2) Allred's interrogatories and request for production had been overbroad, but (3) Home Depot had also failed to be forthcoming in answering discovery requests which were clearly appropriate. Thus, the questionnaire had the dual benefit of bringing discovery to a close and at the same time giving Allred the information she needed. *See 8* Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2008.1 (3d ed. 2015) (concluding that Rule 26 was amended to vest trial courts with the duty to "limit[] … the amount of discovery on a case-by-case basis to avoid abuse or overuse of discovery through the concept of proportionality"). Both Parties accepted this approach during the hearing. Dkt. 79.

Despite accepting the Court's solution during the hearing, Allred now argues that the questionnaire should be excluded. This result would be inequitable and is not supported or required by Rule 26. Home Depot correctly objected to the overbreadth of Allred's interrogatories and request for production. The Court, in crafting the questionnaire, struck a balance between bringing discovery to a close and providing Allred with sufficient, but not unduly burdensome, discovery.

### b. Home Depot's Motion to Partially Strike Allred's Motion for Leave to Amend to Add a Claim for Punitive Damages (Dkt. 98)

Home Depot also argues that Allred should be sanctioned under Rule 37. Specifically, Home Depot argues that the following factual allegations in Allred's Declaration in Support of Her Motion to Amend to Add a Claim for Punitive Damages (Dkt. 85-2) are being revealed for the first time in violation of Rule 26:

1. Declaration Paragraph 9: "Hazlett treated me differently in several ways after I told him about the pregnancy and complications. For example, he excluded me from the bi-monthly business walks – an important management session where Hazlett and all ASM's would walk around the perimeter of the store and review things that needed done and discuss store management strategy. I had always been included on the business walks prior to my pregnancy. Hazlett also stopped inviting me to district team meetings for all of management and said I did not need to worry about coming to the meetings; yet other ASM's were invited. I had been putting together and running 'pro events' which were special store events for professionals who purchased supplies in larger quantities at the store. Despite the fact I had planned a Pro-Event during my pregnancy, Hazlett told me he would handle it and would not allow me to attend my own event."

2. Declaration Paragraph 10: "I had also been regularly appearing as a Home Depot representative on television episodes on Channel 6 where we were special guests for home improvement segments. I had attended with an employee from the Meridian Store. But after I was pregnant Hazlett told me I

could no longer appear on Channel 6 for these segments. However, the Meridian store employee still appeared on the TV segments."

3. Declaration Paragraph 11: "The complications got worse and I was increasingly stressed at work because of the way Mr. Hazlett was treating me. It felt like he was ostracizing me."

Dkt. 85-2 at 3. Home Depot argues that these allegations were responsive to Home Depot Interrogatories 5 and 18 which read:

1. Interrogatory 5: "List each element of damages that You are claiming and include in Your response the following (a) the category into which item of damages falls . . . (b) the factual basis for each item of damages; (c) the amount claimed for each; and (d) an explanation of how each amount was calculated, including any mathematical formula."

2. Interrogatory 18: "Describe each and every fact, Communication, or Document upon which You base Your contention, in paragraph 84 of the Complaint, that Home Depot 'cultivates a work environment and culture that discriminates against female employees in general, as well as pregnant employees and female employees who have child-rearing responsibilities.'"

Dkt. 98 at 4.

In response, Allred argues that neither Interrogatory 5 nor Interrogatory 18 request the information contained in Paragraphs 9, 10, and 11. Specifically, Allred argues that Interrogatory 5 only sought information related to "damages" and Interrogatory 18 only sought information related to Home Depot's failure to cultivate an environment that "allow[ed] women like Randi an opportunity to regularly breast pump." Dkt. 114 at 3-5. With respect to Interrogatory 18, Allred's implicit argument is that the Interrogatory did not require her to describe any harassment Allred experienced during pregnancy.

Neither of Allred's arguments are persuasive. The plain language of the Interrogatories, rather than Allred's summaries thereof, encompass the specific facts that

Allred alleges in Paragraphs 9, 10, and 11. Allred discloses in Paragraph 9 that she was excluded from management walks and the Pro-Day event she organized. In Paragraph 10, Allred discloses that she was prevented from continuing to serve as Home Depot's television representative. In Paragraph 11, Allred discloses that the effect of her exclusion was to make her feel "ostracized." Dkt. 85-2 at 3. Each factual allegation supports both Allred's calculation of damages and her "contention, in paragraph 84 of the Complaint, that Home Depot 'cultivates a work environment and culture that discriminates against … *pregnant employees and female employees who have child-rearing responsibilities*.'" Dkt. 98 at 4 (emphasis added). Because Allred's arguments regarding the limited scope of Interrogatories 5 and 18 are unpersuasive and she fails to argue that these facts were disclosed elsewhere or that her failure to do so was non-prejudicial, the Court will strike those allegations from Allred's Declaration and will not consider them in the context of the Parties' summary judgment or leave to amend motions. *See* Rule 37(c)(1)(C). The Court will not impose attorney's fees pursuant to Rule 37(c)(1)(A).

### c. Allred's Second Motion to Exclude Evidence (Dkt. 99) and Home Depot's Motion for Leave to File Late Declarations (Dkt. 106)

For expediency's sake, the Court will combine its discussion of the motions at dockets entries 99 and 106  In docket entry 99, Allred seeks to exclude exhibits 1, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 20, 21, 27, 29, 30, 31 and 32, all of which are attached to Home Depot's Statement of Undisputed Facts in Support of Its Motion for Summary

Judgment. Dkt. 86. With respect to Exhibits 27 and 29, Allred argues that exclusion is proper because Home Depot failed to include the reporter's signed certification in the exhibits. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) ("A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent."). With respect to the rest of the Exhibits, Allred argues that exclusion is required because Home Depot failed to authenticate them. *Id.* at 777-778.

In response to Allred's motion, the Home Depot took two curative steps. First, it filed an *errata* to which it attached corrected versions of Exhibits 27 and 29 that include the reporter's certification. Dkt. 104. Second, Home Depot filed its Motion for Leave to File Late Declarations. Dkt. 106.

Federal Rule of Civil Procedure 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … (4) issue any other appropriate order." The Committee Notes for the 2010 Amendment to Rule 56 state that Rule 59(e) was amended with understanding that summary judgment "should [not] … be denied by default even if the movant completely fails to reply to a nonmovant's response." Thus, the Rules contemplate that technical shortcomings should not prevent the kind of searching inquiry called for by Rule 56. *See also McCreery v. United States*, No. 4:08-CR-00091-BLW, 2012 WL 4052356, at *2 (D. Idaho Sept. 13, 2012) (denying a petitioner's request for

summary judgment on the basis that the government failed to respond within the appropriate deadline).

Denying Home Depot the opportunity to submit its late declarations and *errata* would result in Home Depot's summary judgment motion being resolve by default, rather than after conducting the kind of review envisioned by Rule 56. Accordingly, the Court will grant Home Depot's motion for leave to file late declarations and will consider the deposition excerpts filed as *errata*.[1]

### d. Allred's Motion to Strike Portions of Home Depot's Response in Opposition to Allred's Motion for Leave to Add Claim for Punitive Damages (Dkt. 113)

Allred has also moved to strike Exhibits 4, 5, and 7 to Home Depot's Response in Opposition to Allred's Motion for Leave to Amend to Add Claim for Punitive Damages. Dkt. 113. Specifically, Allred argues that Exhibits 4 and 5 should be excluded because Home Depot has failed to authenticate them and because they are hearsay. Dkt. 113-1 at 2-3. Allred asks the Court to exclude Exhibit 7, which is a declaration executed by Home Depot employee Jamie Frederick, because (1) Home Depot failed to timely and

---

[1] Allred's motion also notes that Home Depot has failed to comply with Local District Rule 7.1(b), which requires that a statement of undisputed fact in support of a motion for summary judgment not exceed 10 double spaced pages. Dkt. 99-1 at 8-9. I previously granted Home Depot's motion for leave to file excess pages with respect to their brief. Dkt. 76. No corresponding request was made for the statement of undisputed facts. Dkt. 75. Like my analysis with respect to the declarations and *errata* above, I will exercise my discretion under Rule 56(e) and consider the overlength statement of undisputed facts.

adequately disclose Frederick as a witness and (2) paragraph 11 of the declaration contains double hearsay.

The Court will evaluate each exhibit in turn, beginning with Exhibit 4. According to Home Depot, "Exhibit 4 is a business record of Home Depot that is easily authenticated and was produced as part of Defendant's initial disclosures." Dkt. 120 at 2. To authenticate Exhibit 4, Home Depot filed a late declaration from Josh Hazlett. Dkt. 120-2. The Court will exclude this Exhibit. Home Depot should have filed the Hazlett Declaration contemporaneously with its response to Allred's Motion for Leave to Amend. Because Exhibit 4 was not filed in support or opposition to a summary judgment motion, Rule 56 does not provide a reason for adopting a policy of leniency in considering Home Depot's technical failure. Accordingly, the Court will not consider this exhibit in the context of Allred's Motion for Leave to Amend.

The Court will, however, consider Exhibit 5. Although the tardily filed Hazlett Declaration is not a sufficient basis to establish authenticity of the document, as Home Depot correctly points out, Exhibit 5 was produced by Allred and her deposition testimony confirms that the phone number in the Exhibit is her phone number. *See* Dkt. 106-2 ¶ 4; Dkt. 106-3 at 5. This is enough to establish the Exhibit's authenticity. *Orr*, 285 F.3d at 776 ("When a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties.").

Finally, the Court turns to the Frederick Declaration. Dkt. 100-7. Frederick worked in the Nampa store during the same time that Allred was employed there, and,

during that time, took breaks to express breast milk without difficulty. *Id.* In paragraph 11 of her Declaration, Frederick makes the following statement:

> When she worked with me at the Nampa store, I had multiple conversations with Ms. Allred about breastfeeding. Ms. Allred stated that her husband wanted her to be at home rather than working and he complained about having to heat up stored breast milk for the baby while she was at work. We also discussed sometimes forgetting to pump because we were busy. Ms. Allred never complained about Home Depot or Mr. Hazlett or ever indicated that she felt the working conditions were intolerable.

*Id.* at 2. Allred asks the Court to exclude the Declaration because (1) Home Depot failed to adequately disclose Frederick's information in response to Plaintiff's Interrogatories 1, 5, 9, and 14 and (2) paragraph 11 of the Declaration contains hearsay. Interrogatories 1, 5, 9, and 14 request the following information:

1. Interrogatory 1: "Please identify each and every person who may have knowledge of facts relating to this litigation and each and every person likely to have discoverable information relevant to matters alleged in the pleadings, identifying the subject about which the individual is likely to have discoverable information. This interrogatory seeks the identification of all potential witnesses who have, or claim to have, any knowledge whatsoever of any fact pertinent to the claims and defenses in this case." Dkt. 113-1 at 4.

2. Interrogatory 5: "Please provide a complete listing and description of all accommodations and/or modifications of job duties, work schedules, and/or break schedules provided by any of the Idaho Home Depot stores for any pregnant and/or lactating employee(s) between January 1, 2013 and present." *Id.*

3. Interrogatory 9: "With respect to each meeting, conversation, or discussion, however informal, at which time the events which make up the subject matter of the Complaint were discussed by officers and/or managers and/or supervisors and/or employees of Home Depot, set forth: (a) the date of the meeting, conversation or discussion; (b) the name and phone number of each participant of the meeting, conversation, or discussion; and (c) a description in detail of what was said by whom …." *Id.*

4. Interrogatory 14: "If you or anyone representing your interest has obtained any statement or admission, oral or written, signed or unsigned, or any shorthand or recorded statement, or any recorded . . . form anyone with knowledge of the facts or allegations in this case, please state the following for each: (a) the date when and the place where the oral, recorded and/or written statement or admission was made; (b) the name and address of each person or party preset . . . (f) the context of the oral, recorded, and/or written statement or admission in full detail …." *Id.*

The Court concludes certain statements contained in Frederick's Declaration were adequately disclosed. To begin with, Home Depot's Third Supplement to Initial Disclosures identifies Frederick as a witness and states that she has information regarding "[h]er own experiences as a nursing and pumping mother who took breaks to express breast milk while working at Home Depot" and "[l]actation break policies at the Nampa Home Depot." Dkt. 120-3 at 3-4. Allred also acknowledges that Frederick was disclosed in response to Plaintiff's Interrogatory 23. Dkt. 113-1 at 3. To the extent that Allred complains that Frederick was not disclosed in response to the other Interrogatories, Home Depot's disclosure to Interrogatory 23 would satisfy the disclosures required by Interrogatories 1, 5, and 9[2].

Turning to Interrogatory 14, the Court notes that paragraph 11 of the Frederick Declaration recounts a conversation between Frederick and *Allred*. Nevertheless, Home Depot's argument that disclosure was not required because the Declaration was collected

---

[2] The Court agrees with Home Depot that much of the information sought by Interrogatory 14 is protected by attorney-client privilege. Home Depot's disclosure in response to Interrogatory 23 provides all the non-privileged information that could legitimately be sought pursuant to Interrogatory 14.

on March 29, 2019 – just three days before it was served on Allred – is unpersuasive.  It strains credulity to believe that Home Depot did not learn of Frederick's conversation with Allred until March 29, 2019.  To the extent Home Depot learned of the conversation prior to March 29, 2019, it should have been disclosed in response to Interrogatory 14.  Because Home Depot does not argue that the failure to disclose was justified or harmless, the Court will exclude from its consideration paragraph 11 in Frederick's Declaration.  The Court therefore finds it unnecessary to consider Allred's alternative argument that paragraph 11 contains double hearsay.

### 2.    Motion for Sanctions Related to Counsel's Failure to Attend a Deposition (Dkt. 98)

Next, the Court turns to Home Depot's argument that it is entitled to fees and costs related to Ms. Shelly Cozakos'—one of Allred's attorneys—failure to attend the deposition of Home Depot employee Joshua Benjamin.  Dkt. 98 at 7-8.  Under Rule 30(g) "[a] party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to … attend and proceed with the deposition."  Previously, the Court sanctioned Home Depot for failing to appear at a deposition.  Dkt. 51.  At the hearing, the Court expressly warned both Parties that failure to appear at future depositions was inappropriate and sanctionable.  Dkt. 52.

Here, Ms. Cozakos admits that she scheduled and provided notice of the Benjamin deposition, but unilaterally cancelled it.  Dkt. 114-1.  Ms. Cozakos' excuse is that the two other depositions that were scheduled for the morning of December 20, 2018 took longer

than expected, which required her to cancel Benjamin's deposition Ms. Cozakos also argues Home Depot was not harmed because (1) Benjamin did not show up to the deposition and (2) Home Depot's attorney, Lenore Plimpton, was already in Boise for the other depositions. Dkt. 114 at 5-6.

All three arguments are unpersuasive. First, the depositions scheduled before Benjamin's deposition ended at 3:50 PM. Dkt. 119-2 at 6. Thus, there was plenty of time to at least begin Benjamin's deposition, which was noticed for 3:30 PM. *See* Dkt. 98-2 at 1. Second, the fact that Benjamin did not attend the deposition after receiving last minute notice that Ms. Cozakos had cancelled it does not excuse her failure to attend. Ms. Plimpton attended it, which is sufficient under the Rule. *See* Rule 30(g) ("A party who, expecting a deposition to be taken, attends in person or *by an attorney* may recover.") (emphasis added). Third, as Ms. Plimpton correctly points out, she likely could have returned home to Colorado on the evening flight from Boise had Ms. Cozakos provided her with enough notice that she would not be taking Benjamin's deposition. Dkt. 98-1 at 2. In addition to the costs incurred by Home Depot in paying for Ms. Plimpton to remain in Boise for an extra night, Home Depot also incurred the cost of Ms. Plimpton working with Benjamin to prepare for the deposition. *Id.* Accordingly, Home Depot is entitled to reasonable expenses and attorney's fees related to the cancelled deposition of Benjamin including the time spent preparing for the deposition and costs associated with Ms. Plimpton's overnight stay.

### 3. Motion for Summary Judgment (Dkt. 83)

#### A. *Legal Standard*

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . .." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr,* 285 F.3d at 773; *see also* Fed. R. Civ. P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at

trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

Statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

## B. *Factual Background*

The Court will now outline the broad factual parameters of Allred's case, with special emphasis on facts relevant to Allred's Title VII and Idaho Human Rights Act counts[3]. Of course, in describing Allred's case, the Court will construct all evidence, including inferences derived from the evidence, in a light most favorable to the plaintiff.

---

[3] Normally the Court would use the word claim to describe Allred's causes of action. But because Allred's Amended Complaint uses the term "count" to describe her causes of action, the Court will adopt that language to avoid confusion.

Allred began working for Home Depot in January of 2013 at the Meridian, Idaho location. In late 2014, she was encouraged by Home Depot District Manager Trevor Cantwell to apply for a position as Associate Store Manager ("ASM") at Home Depot's Nampa, Idaho location. She interviewed with the Nampa location's Store Manager, Josh Hazlett. Hazlett selected Allred for the position, and she began working as an ASM on January 5, 2015. At the time she was hired, Allred was warned by the Nampa location's Human Resources Manager, Diana Quanstrom, that the Nampa store was a "boys club."[4]

As an ASM, Allred was required to work a "flexible 55 hour per week schedule." Dkt. 86-10 at 2. Her shifts were normally ten hours long. Dkt. 86-9. Four ASMs worked at Home Depot's Nampa location, rotating weekly between the opening, mid-day, and closing shifts. *Id.* Allred's shifts were normally scheduled by Hazlett on the "Managers Schedule." Dkt. 86-14 p. 31:11-13. Her shifts were also input into Home Depot's "Fast" scheduling system. Dkt. 86-2 p. 125:13-14.

In addition to containing the schedule for ASMs, the Mangers Schedule also designated which individual would serve as the "key carrier." *Id.* p. 32:16 – 33:16. Key carriers, as the name implies, carry keys to the entire store and perform time sensitive tasks like unlocking selected merchandise at the request of customers. They receive special training for this task. Dkt. 86-14 p. 29:5-15. Home Depot always requires that

---

[4] During her deposition, Quanstrom could not recall telling Allred that the Nampa location was a boys club. Dkt. 86-18 p. 80:9-18. At the summary judgment phase, however, the Court must credit Allred's allegation. *See Leslie*, 198 F.3d at 1159.

one key carrier be in store.  Dkt. 86-22 p. 48:18 – 49:18; Dkt. 86-14 p. 28:16-20.

According to Hazlett and the Store Manager of Home Depot's Twin Falls, Idaho location, Cecilia Daniel, (hereinafter, "Daniel") this requirement is satisfied so long as a key carrier is in the building – even if the carrier is unavailable because she is expressing breast milk.  Dkt. 86-22 p. 48:18-25; Dkt. 86-14 p. 28:21-25.  Daniel and Hazlett concede, however, that best practices required designated key carriers who became unavailable to ask another carrier to cover for them.  Dkt. 86-22 p. 48:13-17.  Hazlett also regularly tried to ensure that multiple key-carrier-qualified individuals were scheduled at the same time to avoid gaps in coverage.  Dkt. 86-14 p. 31:14-23.  Thus, Allred was justified in believing she was required to ensure that another key carrier was available *before* she could take a break to express breastmilk, despite any contrary Home Depot policy.  Dkt. 102 at 21.

Allred became pregnant in roughly March of 2016.  *See* Dkt. 102 ¶ 7.  After she informed Hazlett that she was experiencing complication with her pregnancy, he began to make comments to her including:

1. "Forgive me for saying this, but if you two lose a baby can't you make another one?"  *Id.* ¶ 8.

2. "I don't know why women don't get pregnant more often because they get 12 weeks of vacation."  *Id.*

In May of 2016, Allred's physician recommended, and she sought, an accommodation from Home Depot that she work no more than five days in a row or lift no more than 20

pounds. Dkt. 102-1. Hazlett denied Allred's request, saying that he would "pretend he did not see it because the requested accommodation would not be fair to … [Allred's] peers." Dkt. 102 ¶ 12. Because Hazlett would not grant Allred's original accommodation request, her physician recommended, and she requested, that she be allowed to go on FMLA leave. *Id.* Hazlett approved that accommodation, and Allred went out on FMLA leave on May 16, 2016. *Id.*

After her FMLA leave ran out, Allred remained on an unpaid leave of absence until January of 2017. In anticipation of her return to work, Allred received her schedule on December 21, 2016 from Brent Pack, the Operations Assistant Store Manager, who was covering for Hazlett during Hazlett's vacation. Dkt. 86-13. Allred attempted to return to work on January 4, but a delay in her paperwork prevented her from returning to work until January 5th. Dkt. 86-14 p. 83:1 – 86:18. On the day she returned, Allred submitted an accommodation request indicating that she "need[ed] additional breaks to accommodate pumping." Dkt. 86-15.

After Allred submitted her request, Hazlett made additional derogatory remarks about breastfeeding including:

1. "[I]n response to a question … [Allred] asked him about whether his wife had nursed their child, he replied how disgusting it was when he saw his wife doing it."

2. "He also told … [Allred] that if … [her] breast milk were to spill on his desk then not to tell him."

3. "Mr. Hazlett also made comments that … [Allred's] pumping breast milk was just … [her] diet plan to lose weight."[5]

In addition to his comments, Hazlett refused to write in the breaks Allred was requesting on the Managers Schedule in the same manner that lunch breaks for key carriers were scheduled, Dkt. 86-9. He also did not schedule breaks for Allred in the FAST system in the same way that breaks were scheduled for cashiers. Dkt. 102 ¶ 22. Home Depot's policy allows for lactating mothers to take a break at any time. Dkt. 86-21 at 8-9. Finally, Hazlett's response fell far short of that of Twin Falls' Store Manager Daniel, who testified that she actively facilitated breaks for an associate who needed to express breast milk. Dkt. 86-22 p. 21:17 – 22:14.

Although Hazlett refused to write in the breaks Allred was requesting on the Managers Schedule, Allred testified that she was still able to take breaks sufficient to express breast milk on every day that she worked at Home Depot after returning from her leave of absence. Dkt. 86-17 p. 357:25 – 358:2. In order to do so however, she felt compelled to obtain coverage from other key carriers, which was "embarrassing, awkward and oftentimes unsuccessful." Dkt. 102 ¶ 22. Despite being able to pump every day in January, Allred was still in pain at work and had to "wear a heavy vest over

---

[5] Again, the Court is quoting Allred's motion, rather than Allred's recollection of Hazlett's verbatim statement.

[her] … clothes during work so that the leaking milk from [her] … breasts would not show through." *Id.* ¶ 23; Dkt. 309:21-23.

At the end of January, Allred asked Hazlett if she could take one day off per week to assist her in preserving her milk supply. *Id.* ¶ 23; Dkt. 86-2 p. 307:18-22. Hazlett met with Allred and told her that he would need to follow up on her request with Quanstrom. Dkt. 86-2 p. 317:1-8. Despite not having heard back from Quanstrom, Allred was allowed to take the requested vacation day on January 24th. Dkt. 86-14 p. 100:1-4. According to Quanstrom however, Hazlett never relayed Allred's request to her. Dkt. 86-18 p. 104:12-19. Quanstrom wrote a Managers Note reprimanding Hazlett after he admitted to "dropp[ing] the ball" on Allred's request.[6] Dkt. 101-2. Allred's final day working at Home Depot, January 30th, coincided with the day the Manager's Note was created. *Id.*; Dkt. 86-1.

After Allred informed Home Depot of her intent to resign, the company made a concerted effort to persuade her to stay. Quanstom and District Manager Trevor Cantwell both contacted Allred and assured her that any damage to her relationship with Hazlett could be repaired. Dkt. 86-18 p. 99. They also gave her the option of moving to a different store if she wanted to. Dkt. 86-19 p. 39:11-12. Neither offer was sufficient to convince Allred to stay. She told Quanstrom and Cantwell, that resigning was the "best

---

[6] The Manager's Note states "[i]t was reiterated to Josh that he has 3 days to complete the process after notification from the associate that they need an accommodation." Dkt.101-2.

thing for her and her family." *Id.* p. 102:2-3. Thereafter, Allred filed this lawsuit making a claim of constructive discharge – contending that her treatment by Home Depot, and specifically the conduct of Ron Hazlett gave her no choice but to resign.

## C. *Analysis*

### a. *Count 1*

Allred's Amended Complaint is not a model of clarity. In Count 1, Allred alleges both that she was "treated differently" on the basis of her pregnancy and that "Home Depot's policies, practices, and/or procedures produced a disparate impact on Allred." Dkt. 55 at 11-12. Allred's Count 2 also alleges that Home Depot discriminated against her but adds the allegation that she was constructively discharged. *Id.* Home Depot has treated Allred's Count 1 as a disparate impact count under Title VII and Count 2 as a disparate treatment count under the same.

Allred's briefing does not contest Home Depot's classification of Counts 1 and 2. Indeed, Allred concedes in her brief that, despite the language contained in Count 1 of her Amended Complaint, she "is not pursuing a disparate impact claim, but only a disparate treatment claim." Dkt. 101 at 5. Because the Court agrees with Home Depot that Count 1 of Allred's Amended Complaint is best read as a alleging a count for disparate impact and Allred concedes that she is not pursuing a disparate impact count, the Court will grant Home Depot summary judgment on Count 1.

### b. *Counts 2 & 4*

#### i. *Applicable Law*

As discussed, the Court interprets Count 2 as a disparate treatment cause of action under Title VII. Count 4 is brought pursuant to the similar provisions of the Idaho Human Rights Act. Under Title VII, it is unlawful for an employer to discriminate against an employee "because of" sex, race or any other protected characteristic. 42 U.S.C. § 2000e–2(a)(1). Title VII, as amended by the Pregnancy Discrimination Act, defines discrimination "because of sex" as including discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Id.* § 2000e(k). "A plaintiff alleging that the denial of an accommodation constituted disparate treatment under the Pregnancy Discrimination Act[] … may make out a prima facie case by showing … that she [1] belongs to the protected class, that she [2] sought accommodation, that [3] the employer did not accommodate her, and that [4] the employer did accommodate others 'similar in their ability or inability to work.'" *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1354 (2015). Implicit in the Supreme Court's description of the required elements for a Pregnancy Discrimination Act claim in *Young* is that plaintiff must have suffered an adverse employment action. *See Hochberg v. Lincare, Inc.*, 334 F. App'x 831, 832 (9th Cir. 2009) (affirming grant of summary judgment on the basis that plaintiff failed to raise a dispute of material fact related to adverse action).

Allred's state law count is evaluated in the same way. Idaho's Human Rights Act prohibits discrimination "because of ... sex." Idaho Code § 67–5909. Claims under the Act are evaluated under the "quantum of proof and standards promulgated in

discrimination cases arising under Title VII." *Bowles v. Keating*, 100 Idaho 808 (Idaho 1979).

At the summary judgment stage, a plaintiff may frame their evidence using the burden shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805-06 (1973). *See Costa v. Desert Palace, Inc.*, 299 F.3d 838, 854–55 (9th Cir. 2002) (*en banc*). Under *McDonnell Douglas*, the employee must first establish a prima facie case of discrimination. *Id.* The burden of production then shifts to the employer to articulate a legitimate non-discriminatory reason for its action. *Id.* Once the employer meets this burden, the employee must show that the employer's reason is a pretext for unlawful discrimination. *Id.* The plaintiff may also eschew the *McDonnell Douglas* framework and simply introduce direct or circumstantial evidence of discriminatory intent. *See also Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003), as amended (Jan. 2, 2004). Ultimately however, the Court is obligated to consider all direct and indirect evidence "as a whole." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016).

### ii. *Allred Has Put Forth Sufficient "Direct Evidence" to Resist Summary Judgment*

#### 1. *Comments Made by Hazlett*

The Court begins by evaluating whether Allred has put forth enough direct evidence of discrimination to resist summary judgment. Allred relies heavily upon statements made by Hazlett. Allred states that Hazlett made the following comments to her during her pregnancy:

1. "Forgive me for saying this, but if you two lose a baby can't you make another one?" Dkt. 102 ¶ 8.

2. "I don't know why women don't get pregnant more often because they get 12 weeks of vacation." *Id.*

According to Allred, after she returned from her leave of absence, Hazlett continued to make denigrating comments including:

1. "[I]n response to a question … [Allred] asked him about whether his wife had nursed their child, he replied how disgusting it was when he saw his wife doing it." *Id.* ¶ 17.

2. "He also told … [Allred] that if … [her] breast milk were to spill on his desk then not to tell him." *Id.*

3. "Mr. Hazlett also made comments that … [Allred's] pumping breast milk was just … [her] diet plan to lose weight." *Id.*

Home Depot argues strenuously that these comments fall into the "stray remarks" doctrine and are therefore insufficient to resist summary judgment. Home Depot relies on *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) and *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) in support of their argument. Both cases are distinguishable because neither involved a *pattern* of comments over an extended period of time. This case more closely resembles *Schnidrig v. Columbia Mach.*, Inc., 80 F.3d 1406, 1411 (9th Cir. 1996), in which the Ninth Circuit held that a series of denigrating comments made by a supervisor related to a person's protected characteristic was

sufficient to make summary judgment inappropriate. The Court agrees with Home Depot that Hazlett's comments are not as egregious as calling someone a "dumb Mexican." *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1149 (9th Cir. 1997). But, *Cordova* supports the Court's conclusion here, because *Cordova* only involved a *single comment* from the supervisor. Here there is a pattern of comments from Hazlett that cannot be swept aside as stray comments.

### 2. *Hazlett's Failure to Schedule Breaks*

Although the "direct evidence" inquiry is generally focused on comments made by supervisors, the Ninth Circuit has made clear that the Court may consider "circumstantial evidence" under the "direct evidence" inquiry. *See Cordova*, 124 F.3d at 1149 ("Cordova has established a prima facie case of discrimination by satisfying the four-part *McDonnell Douglas* test, and alternatively, by providing direct and circumstantial evidence of discriminatory intent."). The intent behind Hazlett's comments is further revealed by the fact that he refused to authorize either of Allred's accommodation requests. Home Depot strenuously argues that Hazlett's actions are irrelevant because (1) Allred could, pursuant to Home Depot's written policy for breastfeeding mothers, take a break at any time and (2) Allred in fact took a day off during the one week that elapsed between her making the second accommodation request and her resignation. Both arguments are unpersuasive.

Beginning with the policy argument, although Home Depot's policy may have been to allow nursing mothers to take a break whenever they needed one, Hazlett and Daniels both testified that to varying degrees an expectation existed that key carriers

would secure coverage prior to taking a break. Hazlett marginalizes this requirement as a mere "professional courtesy" in his testimony, but what is professional courtesy to a supervisor is often a required practice for his or her employees. Dkt. 126-2 p. 181:12-14. And although it is true that Hazlett allowed Allred to take a day off after receiving her request to take vacation days as an accommodation, Dkt. 86-9 at 5, he was also reprimanded for failing to report Allred's request to human resources, Dkt. 101-2. Thus, Allred had no assurances going forward that she could count on consistently being allowed to take the days off she felt was necessary to preserve her milk supply.

### 3. *Other Breaks Were Scheduled*

Home Depot also argues that it was not required to affirmatively schedule Allred's breaks. But there is evidence in the record suggesting that Hazlett and Daniel (the Store Manager in Home Depot's Twin Falls location) did schedule breaks both for employees requesting accommodations and for employee convenience. To begin with, Hazlett scheduled lunch breaks for key carriers in the Nampa store. Although this is not traditional comparator evidence because the lunching employees were not seeking an accommodation, there is no analytical reason that this evidence cannot be used as part of a general analysis under Title VII. A jury could infer from Hazlett's willingness to schedule lunch breaks combined with his unwillingness to schedule Allred's breaks that the latter decision was motivated by animus.

Second, discriminatory animus is also suggested by the example of Daniel, the manager of another store in the region, who actively scheduled and arranged coverage for

a new mother who needed to express breast milk. Dkt. 86-22 p. 21:17 – 22:14. To be sure, Daniel's practice does not establish a minimum standard of conduct for a store manager, such that doing anything less establishes discriminatory animus. To conclude otherwise, would mean that the most generous treatment of an employee by any manager of a nation-wide chain, becomes a nation-wide standard which must be complied with by all managers to avoid a claim of discrimination.[7] But, Daniel's practice is nevertheless relevant because it shows that at least one other Home Depot Manager felt that it was both possible and necessary to work proactively with key employees who needed to express milk. Hazlett's failure to reach a similar conclusion provides some evidence of discriminatory animus.

### 4. *Constructive Discharge*

As discussed above, implicit in the Supreme Court's description of the required elements for a Pregnancy Discrimination Act claim in *Young* is that plaintiff must have suffered an adverse employment action.[8] *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1354 (2015); *Hochberg v. Lincare, Inc.*, 334 F. App'x 831, 832 (9th Cir. 2009)

---

[7] Indeed, any other approach may encourage discrimination, or at least work to the disadvantage of employees, by providing an incentive for large employers to prohibit managers from granting requests for accommodation that are more beneficial to the employee than are allowed by the employer's written policies.

[8] *Young*'s recitation of the elements does not include an explicit requirement that an employee also be subject to an adverse employment action, but other courts in the wake of Young have required plaintiffs to show adverse employment action to survive summary judgment. *See, e.g.*, *Ismail v. Amazon.com*, No. C16-1682JLR, 2018 WL 2684391, at *12 (W.D. Wash. June 5, 2018), reconsideration denied, No. C16-1682JLR, 2018 WL 3303141 (W.D. Wash. July 5, 2018).

(affirming grant of summary judgment on the basis that plaintiff failed to raise a dispute of material fact related to adverse action). Here, Allred cannot show that Home Depot took any affirmative adverse employment actions against her. Therefore, to pursue a claim under the Title VII, the Pregnancy Discrimination Act or the Idaho Human Rights Act, Allred must establish that she was constructively discharged – that her "working conditions bec[a]me so intolerable that a reasonable person in the employee's position would have felt compelled to resign." This is a challenging task. Indeed, "[c]onstructive discharge involves something more than normal harassment, and it does not lie [u]nless conditions are beyond 'ordinary' discrimination[.]" *Lee v. Olsen*, No. 4:14-CV-00160-REB, 2016 WL 5660403, at *3 (D. Idaho Sept. 29, 2016) (internal citation and quotation omitted) (alteration in original). "The working conditions must deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Id.* (internal citation and quotation omitted).

Allred fails to put forth sufficient facts upon which a reasonable juror could conclude that the working conditions became so intolerable that a reasonable person would have quit. After informing Quanstrom of her intent to resign, Quanstrom and Cantwell immediately made a concerted effort to convince Allred to stay while at the same time assuring her that any problems between her and Hazlett could be ironed out. Dkt. 86-18 p. 99. This promise was backed by the fact Cantwell was Hazlett's boss and

also apparently had close relationship with Allred, in light of the fact that Cantwell had recommended her for the ASM position in the first place. Quanstrom and Cantwell also offered to move Allred to a different store if she felt she could no longer work with Hazlett. Dkt. 86-19 p. 39:11-12. In the face of offers to (1) help correct any problems she was having with Hazlett and (2) to move her to another store, Allred instead chose to continue with her resignation because it was the "best thing for her and her family." *Id.* p. 102:2-3.

The facts of this case beg the question of what else Home Depot could have done to remedy the problem once Allred elevated her concerns to the management above Hazlett? Allred immediately had the support of Quanstrom and Cantwell who offered her a variety of remedial options. Instead, she quit. Accordingly, Allred cannot show that circumstances she faced were "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Lee v. Olsen*, 2016 WL 5660403, at *3.

The case law cited by Allred on this issue is inapposite. The primary case upon which Allred relies is *Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1258 (11th Cir. 2017). In *Hicks*, Eleventh Circuit held that there was sufficient evidence to support a jury's verdict that the Tuscaloosa Police Department discriminated against a female officer. Among other allegations, the officer claimed that when she asked for a desk position because the bulletproof vest that was required for patrol officers could lead to breast

infections the inability to breastfeed, the response she received was that she could (1) not wear the vest or (2) wear a larger vest that was potentially ineffective due to large gaps. *Id.* at 1257-58. The officer correctly concluded that this "choice" was illusory and was part of an effort to force her to quit.

Home Depot's response after Allred notified Quanstrom and Cantwell of her problems with Hazlett bear no resemblance to the facts in *Hicks*. In *Hicks* the officer was, in essence, told that if she wanted to continue working as a patrol officer she would need to forgo using standard protective gear, thereby dramatically increasing the odds that she could be killed in the line of duty. Unlike *Hicks*, Quanstrom and Cantwell were unequivocally supportive of Allred. *Hicks* therefore has almost no bearing on this case.

In light of the foregoing, the Court concludes that Allred cannot put forth evidence upon which a reasonable jury could conclude that she was constructively discharged from her position. Accordingly, Home Depot is entitled to summary judgment on Counts 2 and 4.

### c. Count 3

Allred's third Count alleges that Home Depot interfered with her rights under the Family Medical Leave Act. Under the FMLA, "it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided ...." 29 U.S.C. § 2615(a)(1). Allred alleges that Home Depot interfered with the exercise of her rights under the FMLA by considering her FMLA leave as part of its ultimate determination to constructively discharge her. To show a FMLA violation, a

plaintiff must "prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001); 29 C.F.R. § 825.220(c). Such proof can be by direct or circumstantial evidence, or both. *Id.* To defeat this summary judgment motion, Allred must show there is a genuine issue of fact whether Home Depot considered FMLA-protected absences in its decision to terminate Allred – constructively or directly.

Count 2 fails before it even begins. As noted above, there is no evidence that Home Deport terminated Allred or took any adverse employment action. And, Home Depot's affirmative efforts to encourage her to stay by trying to resolve any conflict with Hazlett and offering her a position at another store, belies any suggestion that she was constructively terminated.

But, even if there is some evidence of adverse employment action, there is no evidence that Home Depot took any action based upon her taking FMLA leave. First, the Court notes that Allred does not make any specific allegations in her Declaration regarding Home Depot's consideration of her FMLA leave in its determination to constructively discharge her. *See* Dkt. 102. The sole statement relating the FMLA in her Declaration notes that her request to take FMLA leave was "quickly granted by Hazlett." Dkt. 102 at 4. Turning more broadly to the relevant portions of the record, after having her initial request for an accommodation rejected by Home Depot on approximately May 2, 2016, Allred went out on FMLA leave on May 16, 2016. *Id.* at 4-5. Dkt. 86-2 p.

129:24 – 130:3. Allred's twelve weeks of FMLA leave expired in early August of 2016. *Id.* p. 146:10-12. She did not return, however, until January 6, 2017. Dkt. 102 at 5. Thus, Allred exceeded her FMLA leave by approximately five months and had no right to reinstatement under the FMLA upon her return. 29 C.F.R. § 825.216(c); *see also* Dkt. 86 p. 146:13-22. Nevertheless, Home Depot rehired Allred after her leave of absence. She was resigned less than a month after she returned.

In her brief, Allred argues that her FMLA count should survive because there is a dispute of material fact regarding whether Hazlett discriminated against her prior to her taking FMLA leave and resumed his discriminatory conduct after she returned. Dkt. 101 at 16. But her Declaration does not contain the allegation that Home Depot considered her FMLA leave in any way in dealing with her unrelated requests for assistance in scheduling breaks to express milk. Indeed, the only evidence in the record bearing on Allred's FMLA count is the timeline of events, which shows that roughly six months passed between the end of Allred's FMLA leave and her constructive discharge. That temporal lag is strong evidence that Home Depot did not consider Allred's FMLA leave in constructively discharging her. *Cf. Swan v. Bank of Am.*, 360 F. App'x 903, 906 (9th Cir. 2009) (affirming grant of summary judgment to defendant where there was a four-month gap between the end of plaintiff's FMLA leave and the adverse employment action).

On this record, summary judgment in Home Depot's favor is appropriate. There is no evidence of any adverse employment action, and no evidence that Home Depot

considered her FMLA leave, in any way, in making any employment decision which led to her resignation.  Accordingly, the Court will grant Home Depot's motion for summary judgment on Count 3.

### d.  Count 5

Allred's fifth count alleges that Home Depot unlawfully refused to pay Allred two weeks of paid vacation that were promised to her by Hazlett.  Dkt. 55 at 18-19; Dkt. 102 ¶ 30.  Home Depot points out that Allred could not have accrued wages because she only had worked for three weeks after she returned to Home Depot in January 2017 before she resigned.  Dkt. 86 at 27.  Home Depot attached an accrual detail report to its motion, showing that Allred was not owed any vacation days at the time of her resignation.  Dkt. 86-8 at 2.  To the contrary, Allred had taken more vacation days than she was entitled to. *Id.*  Thus, under the documents submitted by Home Depot, Allred did not have any accrued vacation time for Home Depot to pay.  *See also* Dkt. 86-8.

In response, Allred submitted her affidavit claiming, without explanation, that she is owed compensation for the two weeks of vacation she accrued.   She does not respond to Home Depot's claim that, having only worked for 3 weeks, she did not have any accrued vacation which required any compensation upon her resignation.

As discussed at the outset of this decision, Home Depot had the initial burden of demonstrating the absence of a genuine dispute as to material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*).  Home Depot has met this burden by showing that she had not accrued any vacation at the time of her resignation and, indeed,

had used more vacation than she was entitled to. This, in turn, required Allred to produce evidence sufficient to support a jury verdict in her favor, by showing that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324. Simply claiming in an affidavit, without any explanation as to how or why she accrued vacation, that she is owed backpay for accrued vacation, does not satisfy this burden. Therefore, the Court will grant Home Depot's motion for summary judgment on Count 5.

### e. Counts 6 & 7

Allred's sixth and seventh counts allege that Home Depot (1) breached a contract with Allred (presumably by constructively discharging her) and (2) breached an implied covenant of good faith and fair dealing between the Parties. Allred fails altogether to respond to Home Depot's summary judgment arguments in her brief. *See* Dkt. 101. The Court will, nevertheless, briefly address Allred's breach of contract claims. In Idaho, "[u]nless an employee is hired pursuant to a contract which specifies the duration of the employment, or limits the reasons why the employee may be discharged, the employee is 'at will.'" *Venable v. Internet Auto Rent & Sales, Inc.*, 156 Idaho 574, 578 (2014) (citations omitted). Allred does not dispute that her employment with Home Depot was at-will; as such, she could have been terminated "at any time [or] for any reason without creating liability." *Edmondson v. Shearer Lumber Products*, 139 Idaho 172, 176, 75 P.3d 733, 737 (2003). However, even at-will employees may bring a count of wrongful discharge. *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 333 (1977). Idaho has long recognized "a narrow exception to the at-will employment presumption where the

employer's motivation for the termination contravenes public policy." *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 152 Idaho 632, 640 (2012).

"A termination contravenes public policy 'only where an employee is terminated for engaging in some protected activity, which includes (1) refusing to commit an unlawful act, (2) performing an important public obligation, or (3) exercising certain legal rights and privileges.'" *Venable*, 156 Idaho at 579 (citations omitted). This narrow exception exists to "balance the competing interests of society, the employer, and the employee in light of modern business experience." *Crea v. FMC Corp.*, 135 Idaho 175, 178 (2000). To bring a successful claim under the public policy exception, an employee must show (1) that she was engaged in a legally protected activity; and (2) that there is a causal relationship between her engagement in the protected activity and her termination. *Bollinger*, 152 Idaho at 640.

As the Court's analysis with respect to Allred's Title VII and Idaho Human Rights Act counts suggests, Allred cannot put forth sufficient evidence upon which a reasonable jury could conclude that her decision to resign was in fact a constructive discharge. Accordingly, the Court grants Home Depot summary judgment on Counts 6 and 7.

### f. Count 8

Allred's eighth count alleges that Home Depot and Hazlett negligently inflicted emotional distress upon Allred. Like her breach of contract and implied covenant of good faith and fair dealing counts, Allred fails to respond to Home Depot's summary judgment arguments on Count 8 in her brief. *See* Dkt. 101. For similar reasons to Counts

2, 4, 6 and 7, the Court grants Home Depot summary judgment on Count 8.  In Idaho, an

at-will employee may maintain a count for negligent infliction of emotional distress if the

employee is terminated in violation of public policy.  *See Jepsen v. Corr. Corp. of Am.,*

*No. 1:13-454 WBS*, 2014 WL 1017601, at *9 (D. Idaho Mar. 17, 2014) (Shubb, J.); *see*

*also Wright v. Ada Cty.*, 160 Idaho 491, 499 (2016) (holding that Idaho's Whistleblower

Act provided the duty for the wrongfully terminated employee's NIED count).

Here, Allred cannot show that she was terminated, which is a requirement for

bringing an NIED claim under Idaho law.  *Jepsen*, 2014 WL 1017601, at *9.  Because the

Court has concluded that Allred has not raised an issue of material fact in support of her

argument that she was constructively discharged, the Court grants Home Depot summary

judgment on Count 8.  By extension, the Court will also deny as moot Allred's motion to

amend her complaint to add a claim of punitive damages against Hazlett on the basis of

the NIED claim.

## CONCLUSION

Allred's case does not strike the Court as a particularly strong one.  At the end of a

lengthy discovery period, Allred relies almost exclusively on her Declaration to create

material issues of fact.  To be sure, the statements made by Hazlett are boorish, offensive,

and cannot be condoned.  Even though the Court finds that there is sufficient direct

evidence to conclude that discrimination occurred, Allred cannot show that she was

constructively discharged.  Therefore, her claims fail.  Home Depot did everything in its

power to convince Allred to stay after she Hazlett's supervisors were made aware of his

conduct. Denying Home Depot summary judgment would, in effect, strip employers of the ability and opportunity to remedy workplace misconduct. Rather than being a place of last resort, federal courts would become the first and only stop in resolving workplace disputes. Title VII, the Pregnancy Discrimination Act, and the Idaho Human Rights Act do not command this result.

## ORDER

**IT IS HEREBY ORDERED:**

1. Home Depot's Motion for Summary Judgment (Dkt. 83) is **GRANTED.**

2. Allred's Motion for Leave to Amend to Add a Claim for Punitive Damages (Dkt. 85) is **DENIED**.

3. Allred's Motion to Exclude Exhibit 25 of Home Depot's Statement of Undisputed Facts in Support of Home Depot's Motion for Summary Judgment (Dkt. 94) is **DENIED**.

4. Home Depot's Motion to Partially Strike Allred's Motion for Leave to Amend to Add a Claim for Punitive Damages and for Discovery Sanctions under Federal Rules of Civil Procedure 26, 30, and 37 (Dkt. 98) is **GRANTED** with respect to Paragraphs 9, 10, and 11 of Allred's Declaration in Support of Her Motion to Amend to Add a Claim for Punitive Damages (Dkt. 85-2). Home Depot's motion is also **GRANTED** with respect to its request for attorney sanctions. Within fourteen (14) days of the issuance of this Memorandum Decision and Order, Home Depot will

file a motion for costs and fees associated with its preparation and attendance of the canceled Benjamin deposition.

5. Allred's Second Motion to Exclude Evidence (Dkt. 99) is **DENIED**.

6. Home Depot's Motion for Leave to File Late Declarations in Support of Home Depot's Motion for Summary Judgment (Dkt. 106) is **GRANTED**.

7. Allred's Motion to Strike Portions of Home Depot's Response in Opposition to Allred's Motion for Leave to Amend to Add Claim for Punitive Damages (Dkt. 113) is **GRANTED** with respect to Exhibit 4 and paragraph 11 of the Frederick Declaration. Allred's motion is **DENIED** with respect to the rest of the materials identified in her motion.

DATED: June 28, 2019

_____

B. Lynn Winmill
U.S. District Court Judge